UNITED STATES v. AMERICAN LOAN & TRUST CO. et al.

(Circuit Court, D. Massachusetts. February 12, 1903.)

No. 1,162.

1. TRUST—CONSTRUCTION OF INSTRUMENT CREATING—DISTRIBUTION OF FUND.
   A railroad company having acquired the property of another company, which was subject to three mortgages and liens, executed an instrument of trust by which it created a sinking fund in the hands of a trustee "for the protection, benefit, and further security" of the three liens, naming them in the order of their priority. The instrument then provided that the fund should be applied to the payment of such debts "according to the principles of equity, to the end that all of said lien or mortgage creditors * * * may be entitled thereto in due order." *Held*, that such provision required the application of the fund to the several liens in order of priority which the beneficiaries occupied in the original security.

In Equity. Suit to determine rights in trust fund.

P. C. Knox, U. S. Atty. Gen., and John C. Cowin, U. S. Special Counsel.

Elmer P. Howe, for American Loan & Trust Co.

W. R. Kelly, for Union Pac. Ry. Co.

Winslow S. Pierce and Lawrence Greer, for Union Pac. R. Co.

COLT, Circuit Judge. This bill is brought by the United States against the American Loan & Trust Company, trustee, the Union Pacific Railway Company, and the Union Pacific Railroad Company, for the purpose of determining the rights to a trust fund.

On July 1, 1886, the Union Pacific Railway Company, as successor to the Kansas Pacific Railway Company, executed a certain trust indenture to the American Loan & Trust Company, and there now remains in the hands of the trust company for distribution the sum of $589,291.80, with accumulations from December 14, 1900. The only claimants to the fund are the United States and the Union Pacific Railroad Company; and the only question in controversy is whether, under the trust indenture, the United States has a prior claim to the whole fund, or whether it should be distributed ratably and without preference between both the claimants.

At the time the indenture was created there existed certain mortgages and liens on the property of the Kansas Pacific Railway Company. These included the first mortgage, the United States subsidy lien, and the consolidated mortgage. The first mortgage was a prior lien on the railroad, extending west from Kansas City $393^{15}/_{16}$ miles. The United States subsidy lien was a second lien, and the consolidated mortgage a third lien, on the same property. The consolidated

mortgage also covered other property belonging to the railroad company.

The purpose of the trust indenture was the creation of a sinking fund for the protection and further security of these mortgage and lien creditors of the Kansas Pacific Railway Company. The first mortgage bonds having been paid in full under foreclosure proceedings, the only remaining beneficiaries under the trust are the United States and the Union Pacific Railroad Company, the owner of the consolidated mortgage bonds.

The Union Pacific Railway Company was under no legal or moral obligation to create this trust. It was an entirely voluntary act on its part. The property conveyed to the trustee under the indenture was not embraced in any lien or mortgage. It was, in effect, property added to the existing security of the trust beneficiaries. The donor was at liberty to direct the distribution of this fund in any manner it deemed best. It might have recognized that the consolidated mortgage creditors had a superior equity, and had made them the sole beneficiary, or it might have directed that the three beneficiaries named should share equally in the fund.

The question for our determination, however, is not what might equitably have been done under the circumstances, but what the donor saw fit to do. If the intention of the creator of the trust is made clear by the terms of the instrument, it must be carried out. The court has no power to change or modify the trusts irrevocably impressed upon the fund.

The purpose of the indenture and the trusts imposed upon the trustee are set forth in article 6, and there is nothing to be found in the other parts of the indenture which in any way qualifies or renders doubtful the provisions of this article. It is several times referred to in the instrument as fully setting forth the purposes of the trust. The article reads as follows:

"Art. 6. The sinking fund hereby created and its accumulations are for the protection, benefit and further security of the first mortgage bonds of the Kansas Pacific Railway Company, having priority over the lien of the United States for subsidy bonds issued to the Kansas Pacific Railway Company; and for the benefit, protection and further security of the United States in respect of said subsidy bonds and interest thereon; and also for the benefit, protection and further security of the said consolidated mortgage bonds, secured by the said mortgage of May first, 1879, and shall be applied to the payment and satisfaction of the foregoing debts and obligations of the said Kansas Pacific Railway Company according to the principles of equity, to the end that all of said lien or mortgage creditors of the Kansas Pacific Railway Company, including the United States, may be entitled thereto in due order."

By the terms of this article, the fund is created for the protection and further security (1) of the first mortgage bonds of the Kansas Pacific Railway Company having priority over the subsidy bonds; (2) for the protection and further security of the United States in respect of the subsidy bonds; (3) for the protection and further security of the consolidated mortgage bonds. It will be observed that this is the order of the existing liens on the railroad property. Then follows the provision that the fund shall be applied to the payment of the foregoing obligations, "according to the principles of equity,

to the end that all of said lien or mortgage creditors * * * may be entitled thereto in due order."

According to the natural reading of this article, it appears to have been the intention of the donor that the status of the beneficiaries in the original security should be preserved in the distribution of this further security fund; in other words, that this fund should be subject to the same terms and controlled by the same principles of equity as were applicable to the prior existing security to which it was supplementary. If the last 2 lines of the article had been omitted, and it had stopped with the words "according to the principles of equity," it might be claimed, perhaps, that the donor intended equality of distribution; but, with the addition of the words, "to the end that all of said lien or mortgage creditors * * * may be entitled thereto in due order," such an interpretation is unwarranted, if we are to give effect to the language used. When the donor declares that the fund is to be applied according to the principles of equity, to the end, or to the effect, that the beneficiaries shall be entitled thereto in due order, the only reasonable construction of this provision is that the fund is to be distributed in the order of right which the beneficiaries occupied in the original security, and in the order in which they are named in the indenture. Any other interpretation leads to discord and confusion. If equality of payment were intended, the words "entitled thereto in due order" must be eliminated. These words have no place in the instrument unless the beneficiaries named are to be preferred in the order in which they were preferred in the prior existing security.

In my opinion, the United States is entitled, as a preferred creditor, to this entire fund, by reason of the status of the beneficiaries in the original security, by reason of the manner in which they are named in the trust indenture, and by reason of the terms in which it is directed the trust fund shall be applied.

The Union Pacific Railroad Company bases its superior equitable claim to a share in this fund largely upon the circumstance that the security of the consolidated mortgage bondholders was being constantly depleted by the sale of lands covered by the mortgage, for the purpose of paying interest on the bonds. The answer to this contention is that article 4 of the consolidated mortgage provided that the interest on the bonds should be met in this way. Every purchaser of a consolidated mortgage bond presumably knew of this provision.

But whatever force there may be in the argument urged in behalf of the special equity of the consolidated mortgage bondholders, it cannot avail, because it seems to me that the language of article 6 clearly shows that it was the intention of the donor to direct the application of this trust fund, first, to the payment of the first mortgage bonds; second, to the payment of the subsidy bonds; and, third, to the payment of the consolidated mortgage bonds.

A decree may be prepared directing the payment to the United States of the fund of $589,291.80, and the accumulations thereon, now in the hands of the American Loan & Trust Company, trustee, after deducting therefrom its proper expenses and disbursements. All questions as to the costs and expenses in these proceedings are reserved until the settlement of the decree.